Mr. Butler, good morning, may it please the court, first I'd like to indicate that in court we are only pursuing issue number one. As issues number two, three, and four, as an officer of the court, they were strategically and tactically waived in order to preserve Mr. Hayslette's opportunity for acceptance of responsibility. Mr. Hayslette was looking at approximately a 480-month sentence. I was not the attorney who pled Mr. Hayslette guilty, although I do agree with his purpose and objectives in pleading him guilty, given the overwhelming evidence. Mr. Hayslette So are you withdrawing those arguments, is that what you're saying? Two, three, and four, I am. All right, so your only argument is whether the district court erred in applying 2A1.1 in determining the base offense level? No, I'm waiving specifically the entire issues as it relates to two, issue number two, issue number three, and issue number four, and I'm only proceeding on issue number one as it relates to a sentence outside of the guidelines. And the reason is that based on the totality of circumstances, the pre-sentence report was not contested because there was a possibility and a very real possibility that Mr. Hayslette would have received a greater sentence, and in fact, not only would he have possibly lost acceptance of responsibility, there was a possibility of an enhancement. But as it relates to issue number one, we maintain firmly that the district court did not meaningfully consider the options and the characteristics, and specifically the extraordinary family circumstances of Mr. Hayslette. Number one, Mr. Hayslette was born with a congenital physical disability. He had only two fingers on, well, he was born with three fingers on his left hand. One was surgically removed at the University of Chicago when he was nine months old. The other two specifically didn't provide him any degree of functionality or any kind of capability with that hand. That is one of the factors that made him particularly vulnerable and a target for exploitation by the Latin kings. The court, based on the testimony offered by his father, his father appeared in court in a wheelchair. His father chronicled and delineated all the difficulty that William Hayslette had during his life as a result of just having two fingers and a left hand that was essentially immobile. The district court specifically considered your mitigation argument and noted that while unfortunate, it had no reasonable correlation to his decision to join the Latin kings, participate in Hernandez's murder, and set Chavez's girlfriend's car on fire. So the court specifically considered it and did not think it merited any deviation from the guidelines. The court did consider that, but I don't believe it was a meaningful consideration because she isolated her decision on those aspects of what gang activity did to the community, but she ignored the fact that his mother was confined to a nursing home. She was a stroke victim. His mother also had cerebral palsy. The district court talked about the fact that there was a stable relationship between the mother and father and they had been together for 35 years, but she didn't address the issues that Mr. Hayslette brought up about how the difficult family circumstances affected William. His mother subsequently had a stroke. His mother is not, she's confined to a nursing home. She's not communicative. He stated that his son early in life was a straight A student. And I don't believe the court took into consideration how a straight A student child at 16 years of age becomes a gang member. And the fact that he had those disabilities, he was isolated. He lived in the Hegwash area that was dominated by Latin kings. He was a white male, non-Hispanic. He didn't speak English. His father and his cousin witness talked about how he had been exploited most of his life. And the father testified from a wheelchair indicating that he was a Vietnam veteran. And based on some of the physical disabilities the father had as a result of having four back surgeries, he brought in medical documentation that he had a plate in his neck and throat and a screw in his throat. He had arm surgery. He had nerve damage to his back. He had arm immobility. He talked about all those things had an impact on William Hazlitt. And his inability to have a certain physical degree of vigor prevented William from getting the discipline that he needed. And Latin king members as other gang members, they exploit the weak. And the fact that he had been disabled all of his life with a physical disability that is not a disability that could be hidden. Melissa Oronio, his cousin, talked about the fact that he was a target. And that's what gangs do. They target and they exploit those people who they feel are weak. And I don't believe the district court, in addition to saying what his family composition was, the district court didn't address those issues involving his mother. She didn't address the issues involving the father. She stated that they had a relationship for 35 years. But she's been, the mother's been in a, she's 55 years old. The father is 65 years old. And she spent a significant amount of time in a nursing home. So, and that was something that progressed and coincided with William turning 16 years of age. So, to say that he's presently 28, and to look at him now, and not to go through the evolution as to how he became involved on May of 2016 on that incident, it doesn't look at the totality of circumstances, particularly the characteristics of Mr. Hazlett, his family life, the impact of his mother's disability, the impact of his father's disability, all those things, and combine with someone who has a physical disability that everyone can see. So, as a young kid at 16 years old, you can't hide his hand. And those are the kind of individuals that are targets of gangs. In fact, in his pre-sentence report, he indicated that he had a hard childhood, and that he never seemed to fit in, and that the gangs, the gang accepted him, notwithstanding his disability. So, those types of impressionable young men, they become targets. And to just say later, well, I don't know how a disability, or a hand disability, causes you to become involved in murder, or to become involved in witness intimidation, that's just part of the equation. I think under the sentencing factors, you have to look prior to the event and look at how he came to that point. And he was also a target in the fact that he was living demographically in a predominantly Latin community. He stood out. He wasn't Latin. Gangs looked to recruit people. And he wasn't capable of defending himself based on how his arm was. So, he became prey. And he had to join a gang based on self-preservation. Obviously, the things that he did were horrendous. At sentencing, he said he wakes up every morning and he regrets becoming a member of the Latin kids. But I think for his sentence to be put in perspective, there needs to be a meaningful examination as to how he came and evolved from being that 16-year-old kid who was a straight-A student to become involved in a RICO enterprise. And I'll stand on my 3-4. Unless there are any other questions. Thank you, Mr. Butler. Thank you. Mr. Kerwin. Good morning, and may it please the Court. Brian Kerwin on behalf of the United States. Your Honors, the District Court did not abuse its discretion in imposing a sentence at the low end of the defendant's properly calculated guidelines range. The defendant committed a heinous murder. He also tried to stop a government cooperator from testifying by lighting his girlfriend's car on fire on a public street. The District Court stressed the senseless and overwhelming violence committed by the defendant and his co-conspirators and identified the need to promote respect for the law and to impose general deterrence. And the Court properly considered the defendant's primary argument in mitigation. Contrary to the suggestion of counsel during argument, the Court said explicitly that it was a sympathetic feature of the defendant's life, but it did not excuse or explain the motivation to murder or, in the Court's words, firebomb a witness's car. Critically, at the end of the Court's 3553 explanation, he asked counsel if there was anything else he wished for her to cover, and counsel said he did not. At bottom, the District Court thoughtfully applied 3553A factors. The Court addressed the home life that defendant had, his parents, their loving marriage, as was presented to the Court, as well as the fact that he had excelled in school as a straight-A student and rejected defendant's argument that those warranted a below-guideline sentence and, in fact, found those to be aggravating factors under the circumstances. At the end of the day, the low-end sentence that the Court imposed is presumed to be reasonable, and it was reasonable given the many aggravating facts of the case. So unless there are any questions from the Court, I'll ask that the Court affirm the conviction and sentence imposed by the District Court. Thanks very much. I don't see any. And so, Mr. Butler, the Court appreciates your willingness to accept the appointment in this case and your assistance to the Court and client. The case is taken under advisement, and the Court will be in recess.